**C. I. WHITTEN TRANSFER COMPANY, A Corporation,**

v.

**HUGHES TRANSPORTATION COMPANY, A Corporation.**

**Civ. A. No. 837.**

United States District Court
S. D. West Virginia,
Huntington Division.

Jan. 9, 1957.

Charles F. Dodrill, Huntington, W. Va., for plaintiff.

John E. Jenkins, Jr., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

The sole question here is whether plaintiff is entitled to recover from defendant the sum of $5,240.24, the fair market value of Trailer No. 118–A, and damages for the loss of use of such trailer. The case is submitted for decision upon the following stipulation of facts:

"This action arises out of the interchange of a Fruehauf vantype semi-trailer between the plaintiff and the defendant, which said interchange of equipment was admittedly governed by the terms of a written Trailer Interchange Contract and Trailer Interchange Receipt and Inspection Report, a photostatic copy of each being attached to the complaint. The interchange occurred on the 29th of January, 1955, at Richmond, Kentucky. On the 29th of January, 1955, plaintiff interchanged five Whitten trailers (one of which was trailer No. 118–A) and one Watson trailer to Hughes and received in exchange five Hughes trailers and one Strickland trailer. The exchange was made on an exchange basis and not on a compensation basis. The interchange of the subject trailer was made in the usual course of the business of both the plaintiff and the defendant, said trailer being loaded with explosives belonging to the United States Government and moving under seal from the Radford Arsenal, at Dublin, Virginia, to the Milan Arsenal, at Milan, Tennessee. The routing of the shipment from Radford Arsenal to Milan Arsenal was: via Whitten from Radford Arsenal to Richmond, Kentucky; via Hughes Transportation Company from Richmond, Kentucky, to Milan, Tennessee.

"The exchange of trailers between motor carriers of explosives, as well as between carriers of other commodities, for through trailer movement is a common practice, just as the exchange of railroad cars is standard practice between the railroads. In order to provide a standardized agreement between carriers engaging in the interchange of trailers for through movement, and to the rights and responsibilities of the respective parties, the Regular Common Carrier Conference, an affiliate of the American Trucking Associations, has prepared a standardized agreement known as a 'Trailer Interchange Contract' for the use of its members, if they desire to use it. Such an agreement was entered into between Hughes and Whitten on March 31, 1954, and thereafter its terms governed the interchange of trailers between these two carriers. The interchange which gave rise to this action was subject to the terms of the agreement between Hughes and Whitten of March 31, 1954.

"It is not disputed by the parties that subsequent to the 29th of January, 1955, this trailer, known as Whitten No. 118–A, was further interchanged, exchanged or leased by Hughes to Strickland on February 14, 1955. This is not an uncommon practice, and a trailer may pass through the hands of a number of different carriers before it is finally returned to the actual owner. However, most carriers attempt to have their equipment brought to their own termi-

nals at periodic intervals for inspection, servicing and maintenance.

"In the case at hand, Whitten began efforts to locate No. 118–A when it had not been returned to Whitten after several months. The trailer was finally traced to the possession of Strickland Transportation Company, a Texas corporation, at Strickland's Chicago terminal. Whitten, at that time, had in its possession one of Strickland's trailers, Strickland No. 329, and on or before May 29, 1955, it dispatched a Whitten driver from Whitten's Senoca, Illinois, terminal with the Strickland trailer to Chicago, for the purpose of exchanging Strickland No. 329 for Whitten No. 118–A.

"Upon arrival at Chicago, it was determined that the Whitten trailer had been stolen from Strickland's yard the previous night. The Strickland trailer was delivered to Strickland's Chicago terminal by Whitten's driver, who returned empty-handed to Senoca, Illinois. To date, attempts to locate and recover the stolen trailer have been unavailing. When it appeared that Strickland denied liability to anyone for the loss of the trailer, Whitten began negotiations with Hughes to recover the value of the stolen trailer under the terms of the agreement of March 31, 1954. After protracted negotiations, Hughes ultimately denied liability under the contract and this action was instituted.

"The defendant is not short nor has gained any trailers as a result of this transaction and plaintiff is short one trailer, namely trailer No. 118–A.

"The fair market value of trailer No. 118–A is $5,240.24."

### Conclusions.

Defendant had the right to transfer Trailer 118–A to other carriers without the express permission of plaintiff. That is the common practice among motor carriers who haul explosives, just as the exchange of railroad cars is standard practice between the railroads.

The Trailer Interchange Contract, Section 5, provides as follows:

"A carrier acquiring the use of a trailer from another on an exchange basis shall not be required to redeliver it to the carrier from whom received until such other carrier tenders redelivery of the trailer for which it was exchanged, * * *."

Plaintiff has not redelivered to defendant the trailer for which Trailer 118–A was originally exchanged, or any other trailer to take the place of the trailer which defendant surrendered to plaintiff when defendant took possession of Trailer 118–A. Defendant has not gained any trailers as the result of this transaction.

It is admitted that the interchange was made on an exchange basis. Therefore, the terms of the contract relating to acquisition of trailers on a rental or compensation basis are not applicable.

Under the terms of the contract defendant is not required to redeliver Trailer No. 118–A or to account for its value, or to pay rental thereon, until plaintiff redelivers to defendant one of the trailers which defendant surrendered to plaintiff in the exchange or another trailer of equal value. When plaintiff turns over to the defendant such a trailer, or another trailer of equal value, then the defendant will become obligated under the terms of the contract to account to the plaintiff for the value of Trailer No. 118–A. And under the terms of the contract defendant would then be fully responsible for Trailer No. 118–A, irrespective of how or by whom it was lost. Plaintiff surrendered a trailer to Strickland in Chicago without getting a trailer in return, and for that reason it is now short one trailer. Delivery to Strickland of that trailer did not amount to delivery of a trailer to the defendant as required by the contract.

For the reasons stated, this action is dismissed. Defendant will submit an appropriate order.